565 So.2d 1319 (1990)
James BARRON, M.D., et al., Petitioners,
v.
Josephine SHAPIRO, Etc., et al., Respondents.
No. 74144.
Supreme Court of Florida.
June 14, 1990.
Rehearing Denied September 12, 1990.
Nancy P. Maxwell of Metzger, Sonneborn & Rutter, P.A., West Palm Beach, for petitioners.
Philip M. Burlington of Edna L. Caruso, P.A., West Palm Beach, and Kevin L. O'Brien of Thompson and O'Brien, Fort Lauderdale, for respondents.
Robert M. Klein and Philip D. Parris of Stephens, Lynn, Klein & McNicholas, P.A., Miami, amicus curiae for Florida Medical Ass'n and Florida Hosp. Ass'n.
Jack W. Shaw, Jr. of Mathews, Osborne, McNatt & Cobb, Jacksonville, amicus curiae for Florida Defense Lawyers Ass'n.
GRIMES, Justice.
We review Shapiro v. Barron, 538 So.2d 1319 (Fla. 4th DCA 1989), because of its *1320 conflict with Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976). Our jurisdiction is based on article V, section 3(b)(3), of the Florida Constitution.
On August 17, 1979, Dr. James Barron operated upon Lee Shapiro for removal of malignant polyps in the colon. Following his surgery, Mr. Shapiro developed an infection which progressed to the point that he became in critical condition. At Mrs. Shapiro's request, her husband's nephew, Dr. Emil Gutman, traveled to Florida. Dr. Gutman reviewed the medical records and suggested that a hematologist be called in because Mr. Shapiro was reacting poorly to the blood transfusions. Dr. Barron transferred Mr. Shapiro into the hands of other physicians on October 7, 1979. The infection was finally brought under control by heavy doses of antibiotics. However, Mr. Shapiro's eyesight began to deteriorate in October of 1979, and by December 31, 1979, he was diagnosed as blind. He was discharged from the hospital in February of 1980.
Thereafter, Dr. Gutman contacted Dr. Kunin for his advice concerning Mr. Shapiro's condition. In January of 1982, Dr. Kunin expressed the opinion that Mr. Shapiro's blindness was caused by Dr. Barron's failure to administer antibiotics before the operation. Mr. and Mrs. Shapiro filed a malpractice action against Dr. Barron and Florida Patient's Compensation Fund on January 29, 1982.[1]
The trial court entered summary judgment for the defendants on the ground that the suit was barred by the two-year statute of limitations governing medical malpractice. In addressing the limitations question, the district court of appeal observed:
While the complications arising from Mr. Shapiro's surgery were obvious to all, at what time the Shapiros had or should have had knowledge of the cause of such complications becomes the focal point of this opinion, since knowledge of physical injury alone, without the knowledge that it resulted from a negligent act, does not trigger the statute of limitations. Moore v. Morris, 475 So.2d 666 (Fla. 1985).
538 So.2d at 1319. The court reversed the summary judgment, holding that a genuine issue of material fact existed with respect to when the Shapiros knew or should have known that Mr. Shapiro's complications were caused by Dr. Barron's failure to use antibiotics.
In Nardone, a thirteen-year-old boy was admitted to the hospital in early 1965 and underwent several operations and other procedures. When he was discharged in July of 1965, he was totally blind and comatose and had suffered irreversible brain damage. A malpractice action was filed in federal court in May of 1971. While the applicable statute of limitations at that time was four years, the parents asserted that they did not become aware of the negligence of the physicians and hospitals until a point in time which was well within four years of the institution of the suit.
The district judge dismissed the action on the ground that the suit had not been filed within the period of the statute of limitations. The Fifth Circuit Court of Appeals certified several questions to this Court. In the course of answering these questions, we stated:
Appellants request that this Court adopt the view that the statute of limitations did not commence to run until they became aware of the negligence of the physicians and hospital. Previously, this Court has held that the statute of limitations in a malpractice suit commences either when the plaintiff has notice of the negligent act giving rise to the cause of action or when the plaintiff has notice of the physical injury which is the consequence of the negligent act. City of Miami v. Brooks, 70 So.2d 306 (Fla. 1954). Sub judice, the plaintiffs were on actual notice of the decerebrate state of their son, that he had suffered irreversible brain damage, and in accordance with Brooks, supra, the statute of limitations *1321 began to run when the injury was known.
333 So.2d at 32.
This Court revisited the issue in Moore v. Morris, 475 So.2d 666 (Fla. 1985). In that case, a caesarean section was performed when complications occurred during the delivery of a baby. When the child was born, it became necessary to cut open her chest and to insert a tube to assist her in breathing. The father was advised that the baby might not live due to oxygen deprivation caused by swallowing something while in the womb. However, the baby appeared to make a complete recovery, and the physicians told the parents that the child was fine. It was not until the child was three years old that a physician was able to scientifically diagnose that she suffered from brain damage. A malpractice action was filed approximately four years and nine months after the child's birth. The applicable statute of limitations was four years.
In resolving the case, this Court reaffirmed the principle of Nardone that the statute begins to run when the plaintiffs knew or should have known that either injury or negligence had occurred. However, the defendants' summary judgment was reversed because there were genuine issues of material fact with respect to whether the parents were on notice that an injury had occurred more than four years prior to filing the medical malpractice action. The court pointed to the physicians' assurances of the baby's good health and the mother's understanding at the time of the baby's discharge that she had suffered no damage.
Applying the principle of Nardone to the facts of this case, it is apparent that the Shapiros were on notice of Mr. Shapiro's injury by at least December 31, 1979. As Mrs. Shapiro put it, her husband went in for an operation on his colon and came out blind. This is not a case where the disastrous consequences of the surgery did not become apparent until less than two years before the suit was filed. Moreover, Mrs. Shapiro had full access to the medical records, and there was no fraudulent concealment. The fact that a doctor other than Dr. Barron suggested to Mrs. Shapiro that the tubes in Mr. Shapiro's body may have acted as a host for the infection could not serve to toll the statute. Mrs. Shapiro's contention that the statute of limitations did not commence to run until she had reason to know that injury was negligently inflicted flies directly in the face of both Nardone and Moore. The district court of appeal misinterpreted Moore when it said that knowledge of physical injury alone, without knowledge that it resulted from a negligent act, does not trigger the statute of limitations.
Recognizing the implications of Nardone, the major thrust of Mrs. Shapiro's argument in this Court is that the case no longer applies because of later amendments to the applicable statute of limitations. The applicable statute of limitations in Nardone was section 95.11(4), Florida Statutes (1965), which provided:
Actions other than those for the recovery of real property can only be commenced as follows:
... .
(4) WITHIN FOUR YEARS.  Any action for relief not specifically provided for in this chapter.
Thereafter, the legislature created a specific statute of limitations for medical malpractice, and that statute has been amended several times. The statute applicable to the instant case was section 95.11(4)(b), Florida Statutes (1979),[2] which reads in pertinent part:
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence... .
While the current statute does not say that the cause of action occurs at the time of the injury, neither did the statute under consideration in Nardone. In fact, it could be argued that by using the word "incident" *1322 the legislature envisioned that there would be some factual circumstances in which the statute would begin to run before either the negligence or the injury became known. In any event, we cannot accept Mrs. Shapiro's contention that the word "incident" means the point in time at which the negligence should have been discovered. We believe that the reasoning of Nardone continues to be applicable to the current statute. Thus, the limitation period commences when the plaintiff should have known either of the injury or the negligent act.
Accordingly, we quash the opinion below and remand with directions that the summary judgment be reinstated.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD and KOGAN, JJ., concur.
SHAW, J., dissents with an opinion, in which BARKETT, J., concurs.
SHAW, Justice, dissenting.
The statute of limitations for medical malpractice actions states that a claim must be brought "within 2 years from the time the incident giving rise to the action ... is discovered, or should have been discovered with the exercise of due diligence." § 95.11(4)(b), Fla. Stat. (1979). The majority interprets the term "incident" to mean either the negligent act or the resulting injury. I disagree. In my opinion, the legislature intended the term to mean only the negligent act. As I see it, medical malpractice situations generally unfold thusly: 1) the negligent act, or malpractice, takes place, which results in 2) the victim suffering an injury; 3) the injury is subsequently discovered, and this leads to 4) the discovery of the malpractice. Because the discovery of the injury may precede the discovery of the malpractice by months or even years,[1] the present ruling has the practical effect of drastically shortening the limitations period in many cases.
Nothing in the present statute's language or legislative history supports the majority's conclusion that the limitations period commences with the injury; in fact, everything indicates just the opposite. At one time, the statute expressly provided that the limitations period commenced at the time of the "injury."[2] This term was later deliberately expunged and the phrase "cause of action" substituted in its place.[3] By changing the terminology, the legislature clearly intended to change the commencement of the running of the statute to the time when the negligence or malpractice was discovered: "[U]nder 95.11(4) the plaintiff would have two years from the date of discovery of the malpractice." Staff of Fla.H.R.Comm. on Commerce, CS for HB 895 (1974) Section Summary 2 (emphasis added) (on file Fla. State Archives, series 19, carton 205).[4] This intent was expressed again the following year when the legislature changed the operative provision to its present form, substituting the phrase "incident giving rise to the action" for "cause of action."[5] "Incident," in my opinion, refers to the discrete act of negligence underlying the suit, and this again is borne out by the legislature itself:
The bill further implements the commission's recommendations by setting an absolute time limit measured from the date the cause of action accrues. This is then the same application of the Statute of Limitations as in personal injury litigation, where the statutory period begins *1323 to run from the time the alleged negligent act occurred.
Staff of Fla.S.Comm. on Judiciary-Civ., CS for SB 181 (1975) Staff Analysis 1 (April 10, 1975) (on file Fla.State Archives, series 19, carton 205).[6]
The majority opinion ignores this explicit statutory scheme and relies instead on a ruling of this Court that was decided under a general tort limitations statute enacted in 1919,[7] long before the legislature addressed the medical malpractice issue. See Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976). The present ruling frustrates legislative intent and has the unfair result of denying many malpractice victims their day in court. Many victims may discover their injuries and yet be lulled into inaction by their doctors' good faith assurances that their injuries were to be expected and will heal in good time. I note that in the instant case Mrs. Shapiro alleged that she was led to believe that her husband's infection-related injuries resulted not from his doctor's failure to prescribe antibiotics but rather from her husband's actions in pulling out a postoperative drainage tube. According to her, she simply had no reason to suspect malpractice until she visited a second doctor.
The present ruling also renders the statute's period of repose dubious. The statute provides that "in no event shall the action be commenced later than 4 years from the date of the incident." § 95.11(4)(b), Fla. Stat. (1979). If "incident" were to mean only "negligent act," the statute would provide a bright line cutoff for malpractice claims  no claim could be filed more than four years after the health care provider's malpractice took place. However, under the majority's ruling, "incident" can alternatively mean "injury," as it did in the present case, and this potentially subjects the provider to a limitless period of liability in those cases, such as "lost sponge" cases or faulty reproductive sterilization cases, where there may be no actual "injury" until many years after the malpractice.[8]
In sum, I believe that the present ruling unduly shortens the period of limitations and may extend the period of repose. Neither of these results was intended by the legislature. I would approve the district court decision and hold that the limitations period begins to run only when the negligent act is discovered or should have been discovered with due diligence.
BARKETT, J., concurs.
NOTES
[1] After this suit was filed, Mr. Shapiro died. His wife, as the personal representative of his estate, was substituted to prosecute his claim. The complaint was not amended to claim wrongful death.
[2] This statute remains unchanged to date.
[1] I note that the statute contains a four year period of repose, which provides that "in no event shall the action be commenced later than 4 years from the date of the incident." § 95.11(4)(b), Fla. Stat. (1979).
[2] See ch. 71-254, § 1, Laws of Fla. (the limitations period begins to run when "the plaintiff discovers, or through use of reasonable care should have discovered, the injury").
[3] See ch. 74-382, § 7, Laws of Fla. (limitations period begins to run "from the time the cause of action is discovered or should have been discovered").
[4] Committee Substitute for House Bill 895 was enacted as chapter 74-382, Laws of Florida.
[5] See ch. 75-9, § 7, Laws of Fla. (the period runs "from the time the incident giving rise to the action ... is discovered, or should have been discovered with the exercise of due diligence").
[6] Committee Substitute for Senate Bill 181 was incorporated with "[n]o substantial changes" into House Bill 1267 and was enacted as section 7 of chapter 75-9, Laws of Florida. The section was codified as section 95.11(4)(b), Florida Statutes (Supp. 1974), and has remained unchanged.
[7] See chapter 7838, subsection 19, Laws of Florida (1919), which provides in part:

2928 (1725) Limitations  Actions other than those for the recovery of real property can only be commenced as follows:
....
4. Within Four Years.  Any action for relief not specifically provided for in this chapter.
[8] That the legislature intended "incident" to mean "injury" is further belied by the language of the statute itself. The two terms are used in a mutually exclusive manner:

In those actions covered by this paragraph in which it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the injury within the 4-year period, the period of limitations is extended forward 2 years from the time that the injury is discovered or should have been discovered with the exercise of due diligence, but in no event to exceed 7 years from the date the incident giving rise to the injury occurred.
§ 95.11(4)(b), Fla. Stat. (1979) (emphasis added).