566 So.2d 282 (1990)
Marisol VARGAS, a Minor by and through Her Mother and Next Friend, Olga Vargas, and Her Father and Next Friend, Ruben Vargas, and Olga Vargas, Individually, and Ruben Vargas, Individually, Appellants,
v.
GLADES GENERAL HOSPITAL, the Florida Patients Compensation Fund and Rolando Piedra, Appellees.
Nos. 87-2393, 88-3199.
District Court of Appeal of Florida, Fourth District.
July 25, 1990.
Rehearing Denied September 24, 1990.
*283 Edna L. Caruso of Edna L. Caruso, P.A., and Searcy, Denney, Scarola, Barnhart & Shipley, West Palm Beach, for appellants.
Marguerite H. Davis of Katz, Kutter, Haigler, Alderman, Eaton & Davis, P.A., Tallahassee, for appellee-Florida Patient's Compensation Fund.
Nancy P. Maxwell of Metzger & Sonneborn, P.A., West Palm Beach, for appellee-Glades General Hosp.
Robert M. Klein and Debra J. Snow of Stephens, Lynn, Klein & McNicholas, P.A., for appellee-Rolando Piedra, M.D.
WARNER, Judge.
The parents of a minor appeal a final summary judgment against them finding that their action against Glades General Hospital and Florida Patient's Compensation Fund is barred by the running of the statute of limitations found in section 768.28(11), Florida Statutes (1979). The appellants contend that the statute was tolled by fraudulent concealment of the facts so as to prevent them from discovering the defendants' negligence, or, alternatively, that the cause of action did not begin to run because they had neither notice of the negligent act giving rise to the injury or knowledge of the existence of an injury which was the consequence of a negligent act. From an extensive review of the record we conclude that the trial court properly granted summary judgment, and we affirm.
On October 10, 1979, Marisol Vargas, age sixteen months, was brought to Glades General Hospital because she was having seizures. The Vargas' family physician was called but did not reach the hospital for about fifty minutes. During that time the nurses were giving Marisol oxygen and aspirin suppositories for her fever and taking vital signs. Dr. Piedra, the family physician, ordered an I.V. to administer anti-convulsant medication. However, the nurses were unable to establish the line, and the doctor never tried to do so himself or call for help in order to administer the I.V. Instead the doctor gave Marisol an intramuscular injection of anti-convulsant medication and administered oxygen by mask. There is a conflict in the testimony as to whether Marisol became cyanotic at the hospital. However, Mr. Vargas testified that Marisol changed color and turned blue while he was with her in the Glades emergency room.
Piedra told the Vargases that he could do no more and arranged for Marisol's transport to Hendry General Hospital to the care of Dr. Valiant. Piedra did not accompany Marisol during the ambulance transfer. He admitted in his deposition that the paramedics were less capable of dealing with Marisol's seizures than he was. The Vargases accompanied their daughter in the ambulance and noted that Marisol was still cyanotic during the ride and continued to have seizures.
When Marisol arrived at Hendry General, she was having severe, hard, and constant seizures. She was cyanotic and had vomitus around her mouth and nose. Dr. Valiant attempted to establish an airway, while a nurse attempted to administer intravenous drugs. Because of her constant seizures and rigidity, an anesthesiologist was called to administer a general anesthesia to control the seizures. Dr. Valiant told the Vargases that Marisol needed to be *284 transferred to Variety Children's Hospital in Miami.
Marisol remained in Variety Children's Hospital for two months and went through extensive diagnostic testing. The primary treating neurologist, Dr. Cullen, told the Vargases that Marisol had experienced brain damage as a result of the seizures but that it was impossible to say at that time what her prognosis might be. Although Dr. Cullen never told them that Marisol's brain damage was permanent, Mr. Vargas indicated that he had said, "Maybe she'll outgrow it."
When Marisol was discharged from the hospital she was in a semi-comatose state and was totally blind. She came back under the care of Dr. Valiant who was distraught by the amount of damage which had been done to Marisol. She formed the opinion that had Dr. Piedra properly treated Marisol at Glades General, the brain damage would have been avoided. That opinion was also shared by Dr. Cullen, although neither doctor told the Vargases of their conclusions. Both doctors determined that the prolonged period of hypoxia, or lack of oxygen to the brain, caused the brain damage. This occurred either from the failure of Dr. Piedra to get Marisol's seizures under control at Glades General or his failure to establish an airway. It was both doctors' opinion that both Piedra and Glades were negligent in their care of Marisol and that this negligence led to her brain damage.
Despite the massive brain damage, Marisol did make some improvement. About a year after the incident her sight returned. However, Marisol never learned to walk, talk, or feed herself. She continued to wear diapers. Nevertheless, the Vargases felt that she might continue to improve. It was not until after a subsequent displeasing experience at Glades General emergency room over four years later that Mrs. Vargas' brother suggested to them that perhaps Marisol might not have been in her current condition if she had received proper treatment for her seizures. This suit was subsequently filed.
Glades General moved for summary judgment on the basis that the four year statute of limitations against the state or its agencies contained in section 768.28(11), Florida Statutes (1979) had run. While more than four years had expired from Marisol's discharge from the hospital, appellants claim that the trial court erred in finding that the statute began to run in 1979. They claim either that the statute did not run because defendant Glades fraudulently concealed material information to prevent the appellants from learning of its negligence or, alternatively, that they were not on notice of an injury which was a consequence of a negligent act or of the negligent act itself, citing Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976); City of Miami v. Brooks, 70 So.2d 306 (Fla. 1954); Almengor v. Dade County, 359 So.2d 892 (Fla. 3d DCA 1978).
While appellees contend that the statute of limitation contained within section 768.28(11), Florida Statutes (1979), providing for a waiver of sovereign immunity for state agencies may not be extended by fraud, concealment or misrepresentation, we disagree. Although the waiver should be strictly construed, Levine v. Dade County School Board, 442 So.2d 210 (Fla. 1983), statutes should also be construed in light of the manifest purpose to be achieved by the legislation. Tampa-Hillsborough County Expressway Authority v. K.E. Morris Alignment Service, Inc., 444 So.2d 926, 929 (Fla. 1983). The doctrine of sovereign immunity rests on two public policy considerations: 1) the need to protect the public from exaggerated depletions of the public treasury, and 2) the need to administer the government in an orderly manner. Berek v. Metropolitan Dade County, 396 So.2d 756 (Fla. 3d DCA 1981). In 1973 the legislature passed the waiver of sovereign immunity provisions contained in section 768.28, Florida Statutes, as a legislative declaration of a public policy which held that allowing citizens injured by the tortious acts of state agents to sue for damages resulting from their injuries outweighed the state's interest in being exempt from suit. By extending section 768.28 for fraud, the policy concern of protecting *285 the public pocket has not been affected. The tolling for fraudulent concealment in no way affects the legislature's determination that the state only be liable up to the limits set forth in the statute, which is the primary concern of the legislative enactment. See Circuit Court of Twelfth Judicial Circuit v. Department of Natural Resources, 339 So.2d 1113 (Fla. 1976). In fact to disallow the doctrine of equitable tolling of the statute of limitations for fraudulent concealment in cases of state agencies would defeat the legislative purpose of allowing citizens who have been injured by tortious state conduct to recover damages.
Fraudulent concealment as an exception to the statute of limitations has as its philosophy that "courts will not protect defendants who are directly responsible for the delays of filing because of their own willful acts." Nardone at 36. It is a doctrine to prevent the court from participating in the fraud of the defendant. Such a doctrine applies to all who come to the court for redress. And consistent with the provision of the waiver statute to make the state liable "to the same extent as a private individual under like circumstances ..." the state is treated in the same manner as a private individual in applying the equitable doctrine of tolling. For these reasons, we hold that the statute of limitations contained in section 768.28(11), Florida Statutes, may be tolled by fraudulent concealment of the facts necessary to put the injured party on notice of the negligent act or the resulting injury.
With respect to the doctrine of fraudulent concealment as applied in medical malpractice cases, the Third District succinctly stated:
The plaintiff is not on notice, however, as to either the negligent act or the injury caused thereby where he has no actual knowledge of either fact because (1) the medical defendant or his employee, servant or agent actively engages in concealment against the plaintiff so as to prevent inquiry or elude investigation or mislead the plaintiff relating to the existence of the cause of action, or (2) the medical defendant-physician or the medical defendant, through his employee/servant/agent-physician fails to reveal to the plaintiff facts [as distinguished from mere possibilities or conjecture] known to, or available to such physician by efficient diagnosis, relating to the nature and/or cause of the plaintiff's adverse physical condition. The statute of limitations is tolled upon the happening of either of the above two events. (Citations omitted.)
Almengor v. Dade County, 359 So.2d at 894.
As applied to the facts of this case we conclude that there was no fraudulent concealment on the part of Glades General so as to toll the statute of limitations as to it. Glades had no contact with Marisol or her parents after the child left the hospital on the night of October 10, 1979. While the appellants claim that the hospital records did not reveal the fact that Marisol was cyanotic at Glades, her condition was observed by her father who testified that the child was turning blue while in the emergency room. Therefore, the knowledge which was allegedly concealed was already known by the Vargases by their own observations. Further, the duty to reveal facts as to the cause of the child's condition necessarily terminates when the doctor/patient relationship terminates. Glades' relationship with Marisol terminated when she was transferred to Dr. Valiant's care. At the time she was transferred the brain damage had not yet occurred. Glades was under no duty to reveal any cause of injury after the termination of Marisol's care.
Finally, as the trial court found, and we agree, the appellants were on notice from the time of Marisol's discharge from Variety Hospital in 1979 of the child's injury sufficient to put them on notice of a potential invasion of their legal rights. Dr. Cullen told them that the child had suffered brain damage as a result of the seizures. The damage was obvious and overwhelming as Marisol was in a persistent vegetative state. Appellants claim that they did not know that the condition was *286 permanent, but that is immaterial. The proper inquiry is whether they were on notice that her condition was an "injury." Thus, we distinguish this case from Brooks v. Cerrato, 355 So.2d 119 (Fla. 4th DCA 1978), and Swagel v. Goldman, 393 So.2d 65 (Fla. 3d DCA 1981), as well as Florida Patient's Compensation Fund v. Tillman, 453 So.2d 1376 (Fla. 4th DCA 1984), aff'd., 487 So.2d 1032 (Fla. 1986), which dealt with post surgery symptoms which the respective plaintiffs did not realize were an injury but instead believed and were told by their doctors were normal post-operative symptoms which would improve. In contrast, the appellants were told that Marisol had suffered brain damage as a result of the prolonged seizures and that such damage might improve with time.
In Barron v. Shapiro, 565 So.2d 1319 (Fla.,1990), the supreme court reaffirmed the principle set forth in Nardone and reaffirmed in Moore v. Morris, 475 So.2d 666 (Fla. 1985), that the statute of limitations begins to run when the plaintiffs knew or should have known either injury or negligence had occurred. In doing so it reversed this court's holding that notice of physical injury alone, without knowledge that it resulted from a negligent act, does not trigger the statute of limitations. See Shapiro v. Barron, 538 So.2d 1319 (Fla. 4th DCA 1989). Thus, it is clear that the triggering event for the statute of limitations in this case was the Vargas' knowledge of the injury to their child, not the knowledge that the injury was caused by a negligent act. From the evidence it is undisputed that knowledge of the injury occurred more than four years prior to the filing of this suit. Consequently, summary judgment was properly entered.
Affirmed.
HERSEY, C.J., and GARRETT, J., concur.