583 So.2d 1000 (1991)
UNIVERSITY OF MIAMI, Petitioner,
v.
Adam BOGORFF, etc., et al., Respondents. Kjell Koch, M.D., Petitioner,
v.
Adam BOGORFF, etc., et al., Respondents. Lederle Laboratories, Petitioner,
v.
Adam BOGORFF, etc., et al., Respondents.
Nos. 74797, 74835 and 74863.
Supreme Court of Florida.
January 18, 1991.
Rehearing Denied August 29, 1991.
*1001 A. Blackwell Stieglitz and Steven E. Stark of Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, for petitioner, University of Miami.
Shelley H. Leinicke of Wicker, Smith, Blomzvist, Tutan, O'Hara, McCoy, Graham & Lane, Fort Lauderdale, for petitioner, Kjell Koch, M.D.
Paul R. Regensdorf of Fleming, O'Bryan & Fleming, Fort Lauderdale, for petitioner, Lederle Laboratories.
John Beranek of Aurell, Radey, Hinkle & Thomas, Tallahassee, Florida; and Jon E. Krupnick of Krupnick, Campbell, Malone & Roselli, P.A., Fort Lauderdale, for respondents.
McDONALD, Justice.
We review Bogorff v. Koch, 547 So.2d 1223 (Fla. 3d DCA 1989), based on express and direct conflict with Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976), and Barron v. Shapiro, 565 So.2d 1319 (Fla. 1990). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash Bogorff and direct the district court to reinstate the trial court's decision.
This case involves whether a trial court properly granted summary judgment in favor of the defendants in a medical malpractice action because the plaintiffs filed their complaint after the statutory limitation period had expired. We hold that the trial court properly granted summary judgment as a matter of law.
In 1970 doctors diagnosed three-year-old Adam Bogorff as having undifferentiated lymphoblastic leukemia. Later that year the Bogorffs moved to Florida where Adam became the patient of Dr. Koch, a member of the University of Miami's medical staff. At that time Adam's leukemia was in remission. In July 1971, to maintain the remission of leukemia, Dr. Koch began treating Adam with doses of methotrexate administered intrathecally (in the spine) in conjunction with spinal and cranial radiation. Adam suffered the side effects associated with this treatment, including loss of hair and appetite, that Dr. Koch told the Bogorffs to expect. In January 1972 Dr. Koch administered a final intrathecal injection of methotrexate as a prophylactic measure. Approximately one month later the Bogorffs noticed changes in Adam's condition including slurred speech, headaches, nausea, impaired motor skills, and lethargy. Three months later Adam suffered convulsions and lapsed into a coma. Treatment succeeded in bringing Adam out of the coma. Unfortunately, he never regained his former state of health and, by July 1972, was a quadriplegic and severely brain damaged.
Over the next few years, the Bogorffs took Adam to a series of physicians in an unsuccessful effort to improve his condition. During that time Dr. Koch continued to monitor Adam's leukemia, which remained in remission, until his departure from the area in 1978. In 1979 the Bogorffs contacted legal counsel regarding the existence of a medical malpractice or products liability claim for Adam's injuries but were advised that no cause of action existed. In 1982, to support their application for social security financial aid, the Bogorffs obtained Adam's complete medical records from his pediatrician, Dr. Winick. For the first time they read the correspondence among the physicians who had treated or evaluated Adam. These letters indicated that Dr. Koch's administration of intrathecal methotrexate in conjunction with radiotherapy was a possible cause of *1002 Adam's condition. In December 1982 the Bogorffs filed a multi-count complaint against Dr. Koch seeking damages for medical malpractice, against the University of Miami for vicarious liability, and against Lederle Laboratories, the manufacturer of methotrexate, for products liability.
Contending that the expiration of the statute of limitation barred the Bogorffs' complaint, Dr. Koch, the University of Miami, and Lederle Laboratories moved for summary judgment. The trial court granted summary judgment in their favor, finding that the statute of limitation had expired. The district court reversed, holding that genuine issues of material fact existed with respect to when the Bogorffs' cause of action accrued and the statutory limitation period commenced. In reaching its decision the district court held that "[i]f, in April 1972, they [the Bogorffs] knew that something was wrong with Adam, it does not necessarily follow that they knew or should have known that Adam's condition was caused by medical negligence." 547 So.2d at 1227. Thus, the district court required the Bogorffs to have knowledge both of Adam's physical injury and that a negligent act caused his injury before the limitation period could begin to run.
We do not find this to be an accurate statement of the law. In Barron we expressly rejected the argument that knowledge of a physical injury, without knowledge that it resulted from a negligent act, failed to trigger the statute of limitation. Rather, we reaffirmed the principle set forth in Nardone and applied in Moore v. Morris, 475 So.2d 666 (Fla. 1985), and held that the limitation period commences when the plaintiff should have known of either (1) the injury or (2) the negligent act.
In the case under review, therefore, the triggering event for the limitation period was the Bogorffs' notice of injury to their child; not, as the district court required, additional notice that Dr. Koch's negligence caused the injury. No party disputes that Adam Bogorff's injuries occurred, at the latest, by July 1972. At that time the Bogorffs knew of Adam's paralyzed and unresponsive condition. Although they did not know if medical negligence caused that condition, they knew that Dr. Koch had treated Adam and knew of his injury. This was sufficient for their cause of action to accrue, thereby commencing the statutory limitation period against Dr. Koch and the University of Miami. Barron; Nardone. See also Cristiani v. City of Sarasota, 65 So.2d 878 (Fla. 1953) (knowledge of a negligent act alone is sufficient to commence the limitation period). Adam received treatments to maintain the remission of his leukemia; three months after the last treatment he became comatose and, soon thereafter, completely disabled. As a matter of law, the Bogorffs were on notice of the possible invasion of their legal rights and the limitation period began running. See Nardone; Seaboard Air Line Railroad v. Ford, 92 So.2d 160 (Fla. 1955); City of Miami v. Brooks, 70 So.2d 306 (Fla. 1954).
The Bogorffs contend they did not know or should not have known that Adam had suffered a distinct injury because Dr. Koch informed them that the natural spread of leukemia to the brain or a viral infection caused Adam's ever-worsening physical condition and denied that his treatment caused Adam's injuries. In essence, the Bogorffs claim that Dr. Koch's acts constituted fraudulent concealment, thus tolling the statute of limitation until they discovered their cause of action in 1982.
Under the circumstances of this case, there is an issue of fact on whether Dr. Koch's actions constituted fraudulent concealment. Numerous physicians examined Adam and offered possible theories for the cause of his condition, including intrathecal methotrexate.[1] On the other *1003 hand, Dr. Koch opined that leukemia or a viral infection caused Adam's condition.[2] Differing expert opinions generally do not amount to fraudulent concealment or misrepresentation when there are other equally, or more, likely causes of a patient's condition. A jury, however, may have determined that Dr. Koch's views were not an honest difference of opinion, but were taken to detract from the Bogorffs' concerns that there was a causal connection between his treatment and Adam's ultimate condition. An attending physician has a strong duty to fully address the concerns of patients and to be fully candid with them. If a doctor's communication to a patient was intended to cause that patient to abandon a claim or an investigation, it may amount to fraudulent concealment.
Even if there were fraudulent concealment by Dr. Koch, however, we find the Bogorffs' complaint against Koch and the University of Miami barred by the repose period set forth in subsection 95.11(4)(b), Florida Statutes (1975), which states in pertinent part:
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued.... In those actions covered by this paragraph in which it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the injury within the 4-year period, the period of limitations is extended forward 2 years from the time that the injury is discovered or should have been discovered with the exercise of due diligence, but in no event to exceed 7 years from the date the incident giving rise to the injury occurred.

(Emphasis added). In contrast to a statute of limitation, a statute of repose precludes a right of action after a specified time which is measured from the incident of malpractice, sale of a product, or completion of improvements, rather than establishing a time period within which the action must be brought measured from the point in time when the cause of action accrued. See Melendez v. Dreis & Krump Manufacturing Co., 515 So.2d 735 (Fla. 1987); Universal Engineering Corp. v. Perez, 451 So.2d 463 (Fla. 1984); Bauld v. J.A. Jones Construction Co., 357 So.2d 401 (Fla. 1978).
The Bogorffs contend that this statute cannot be applied to an incident which occurred in 1972. We disagree. When the Bogorffs' cause of action accrued in July 1972, the statute of limitation in effect at that time provided four years to file their complaint. See § 95.11(4), Fla. Stat. (1971). Hence, they could bring suit up until July 1976. After subsection 95.11(4)(b) became effective on May 20, 1975 the repose period set forth therein cut off the Bogorffs' right of action, absent fraud, in January 1976  four years after the incident of malpractice, i.e., when Dr. Koch administered the *1004 final injection of intrathecal methotrexate. We have previously held that a statute of repose could be applied to a triggering incident which occurred before the effective date of the statute, provided that the plaintiff had a reasonable time remaining to bring suit. Bauld; Purk v. Federal Press Co., 387 So.2d 354 (Fla. 1980); Cates v. Graham, 451 So.2d 475 (Fla. 1984). The Bogorffs had over three years before the repose statute barred their claim and seven to eight months after the statute's effective date in which to bring their suit. Thus, they had a reasonable time to file their complaint, and, by not bringing suit before January 1976, the repose period bars their claim. Even if there were fraudulent concealment by Dr. Koch, which could have extended the repose period until January 1979, the action would still be barred as untimely.
Moreover, assuming arguendo that the Bogorffs' cause of action did not accrue until, as they contend, 1982, the statute of repose would still bar their action. In Carr v. Broward County, 541 So.2d 92 (Fla. 1989), we held that the statutory repose period for medical malpractice actions does not violate the constitutional mandate of access to courts,[3] even when applied to a cause of action which did not accrue until after the period had expired. See also Pullum v. Cincinnati, Inc., 476 So.2d 657 (Fla. 1985) (receding from Battilla v. Allis Chalmers Manufacturing Co., 392 So.2d 874 (Fla. 1980), and holding the twelve-year statute of repose in products liability actions constitutional even as applied to causes of action which did not accrue until after the period expired), appeal dismissed, 475 U.S. 1114, 106 S.Ct. 1626, 90 L.Ed.2d 174 (1986). Thus, under the interpretation of the facts most favorable to the Bogorffs, accrual of their cause of action in 1982 would result in their complaint being timely filed within the statute of limitation, but their suit would be barred by the statute of repose.
We now turn to the products liability claim against Lederle Laboratories. For the reasons expressed by the district court, we agree that it cannot be determined from the record whether the twelve-year statute of repose set forth in subsection 95.031(2), Florida Statutes (1975), bars the Bogorffs' action against Lederle. 547 So.2d at 1228. Nevertheless, their action is barred because the statutory limitation period expired before they filed their complaint. By July 1972 the Bogorffs were clearly aware of Adam's paralyzed and brain-damaged condition. They knew sometime in 1972 that the child had been treated with methotrexate. This is not a case where a drug was ingested and the alleged effects did not manifest themselves until years later. E.g., Diamond v. E.R. Squibb & Sons, Inc., 397 So.2d 671 (Fla. 1981). Rather, in this case, the alleged effects of methotrexate manifested within months of Adam's last treatment.
We acknowledge that Adam's condition, which the Bogorffs now attribute to intrathecal methotrexate treatment, might not have been easily distinguishable from the effects of leukemia on his system. The knowledge required to commence the limitation period, however, does not rise to that of legal certainty. Steiner v. Ciba-Geigy Corp., 364 So.2d 47 (Fla. 3d DCA 1978), cert. denied, 373 So.2d 461 (Fla. 1979). Plaintiffs need only have notice, through the exercise of reasonable diligence, of the possible invasion of their legal rights. Nardone; Seaboard Air Line Railroad; City of Miami. The Bogorffs were aware not only of a dramatic change in Adam's condition, but also of the possible involvement of methotrexate. Such knowledge is sufficient for accrual of their cause of action. Furthermore, because knowledge of the contents of accessible medical records is imputed, the Bogorffs had constructive knowledge of medical opinion that the drug may have contributed to the injury in 1977. In either event, the Bogorffs had sufficient knowledge, actual or imputed, to commence the limitation period more than four years prior to filing their complaint in December 1982. See § 95.11(4), Fla. Stat. (1971). Any conduct of *1005 Dr. Koch which may have tolled the running of the statute of limitation as to him cannot be imputed to Lederle so as to toll the statute to it.
We are cognizant that, in medical malpractice actions, courts should grant summary judgment in favor of the defendant cautiously. Moore, 475 So.2d at 668. A summary judgment is properly rendered only upon showing a complete absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Whitten v. Progressive Casualty Insurance Co., 410 So.2d 501 (Fla. 1982); Fla.R.Civ.P. 1.510(c). The proof must be such as to overcome all reasonable inferences in favor of the party opposing summary judgment. Holl v. Talcott, 191 So.2d 40 (Fla. 1966). Even resolving all inferences in a light most favorable to the Bogorffs, their action is time barred as a matter of law.
We therefore quash the district court's decision and direct the district court to reinstate the trial court's decision.
It is so ordered.
OVERTON and GRIMES, JJ., and EHRLICH, Senior Justice, concur.
SHAW, C.J., and BARKETT and KOGAN, JJ., dissent.
NOTES
[1] Dr. Giesecke, a neurologist, in a letter to Dr. Koch, offered three possibilities as to the type of Adam's brain damage: localized leukemic implant, multifocal leuko-encephalopathy, or subcortical demyelination. Dr. Cullen, who succeeded in rousing Adam from his coma, attributed Adam's condition to "some type of peculiar encephalopathy, either related to his leukemia, radiation, or perhaps related to a folic acid deficiency accompanying use of Methotrexate." Dr. Winick, in a letter to Dr. Koch, posited that "[w]hether this whole business is secondary to Methotrexate is difficult to ascertain." Later, Dr. Winick wrote that Adam seemed to suffer from some type of brain damage, "which is related to either his leukemia or more likely to radiation or perhaps related to a folic acid deficiency." Dr. Charyulu, the radiologist, opined that "there may be some distant or remote connection with Methotrexate toxicity." Dr. Zee, in a letter to Dr. Winick, diagnosed Adam as suffering from "[e]ncephalopathy with irreversible anatomical changes possibly secondary to radiation and intrathecal methotrexate."
[2] Sometime in 1972, the Bogorffs brought Dr. Koch a copy of a medical journal article linking methotrexate treatment of leukemia patients with brain damage and questioned him as to whether the treatment caused Adam's condition. See Kay, Encephalopathy in Acute Leukaemia Associated with Methotrexate Therapy, 47 Archives of Diseases in Childhood 344 (1972). According to Mr. Bogorff, Dr. Koch read the article in his presence, dismissed it as inapplicable to Adam, and discarded it in the trash. Mr. Bogorff stated in his deposition that he was interested in the article because it "was a possibility at least in what was going on" although he claimed never to have read the article. In his deposition, Dr. Koch denied throwing the article in the trash but admitted rejecting the article as inapplicable to Adam, although he pointed out several differences between the patients chronicled in the article and Adam.
[3] Art. I, § 21, Fla. Const.