606 So.2d 665 (1992)
Gregory ALLEN, etc., et al., Appellants,
v.
ORLANDO REGIONAL MEDICAL CENTER, et al., Appellees.
No. 91-2333.
District Court of Appeal of Florida, Fifth District.
September 18, 1992.
Martin Trpis, Bethesda, Maryland, and John Militana of Militana, Militana & Militana, Miami, for appellants.
Richard W. Bates and Eric D. Struble of Mateer, Harbert & Bates, P.A., Orlando, for appellees.
DAUKSCH, Judge.
This is an appeal from a final order, the trial court having previously granted appellees Orlando Regional Medical Center's ("ORMC") and Dr. Arnold Lazar's ("Lazar") motions for summary judgment. Appellees asserted below that they were entitled to summary judgment based on the expiration of the statute of limitations in this medical malpractice case, but we disagree and reverse.
Appellants' Second Amended Complaint, filed February 22, 1988,[1] alleges that on *666 November 5, 1983, appellant Sandra Allen was admitted to ORMC in active labor and that early in the afternoon, the delivering physician, Lazar, delivered a baby boy, Gregory Allen. The complaint alleged that ORMC staff failed to properly monitor fetal well-being during the delivery and, when the child was born, the initial impression was that the baby was premature, suffering from perinatal asphyxia, pneumonia, and hypovolemia. The complaint alleged that Gregory showed evidence of cerebral palsy and demonstrated psychomotor retardation with dysplegia, blindness and marked spasticity. In particular, appellants further alleged:
12. During the time of the care and treatment of SANDRA and GREGORY, the Defendants in this matter, each and every one, represented to the Plaintiffs that GREGORY'S injuries were residuals of normal events. Plaintiffs did not know that Cerebral Palsy may be caused by negligence of health care providers.
* * * * * *
14. The Plaintiffs relied upon the representations of the Defendants, each and every one, and did not discover, nor could have discovered, until late spring of 1986, that GREGORY'S injuries had been caused by negligence of the Defendant health care providers.
Appellants' count against appellee Lazar alleged that he knew or should have known the proper and acceptable methods of diagnosing Gregory's condition, yet failed to fully investigate and analyze the source of Sandra Allen's vaginal bleeding and failed to adequately monitor the fetus. The count against appellee ORMC made similar claims.
Appellees filed a motion for summary judgment, adopting the motion of another defendant who had alleged:
Since plaintiffs discovered during late spring 1986 that the child's injuries were allegedly caused by the negligence of the defendants, this occurred before the expiration of the four-year statute of repose. However, since Sandra Allen had notice of the injuries of her child immediately after birth, the limitations period for this action commenced at that time. See Barron v. Shapiro, 565 So.2d 1319 (Fla. 1990 and University of Miami v. Bogorff, [583 So.2d 1000 (Fla. 1991)].
Appellants responded that the statute of limitations did not proceed to run from the time Sandra Allen became aware of Gregory's brain hemorrhage at the child's birth, because there was nothing about a hemorrhage in the brain of a prematurely born infant which suggests that there was medical negligence or an injury caused by medical negligence. Appellants relied upon Moore v. Morris, 475 So.2d 666 (Fla. 1985).
The issue in this appeal is when the statute of limitations began to run. In Nardone v. Reynolds, 333 So.2d 25, 32 (Fla. 1976)[2] the Supreme Court of Florida held "the statute of limitations in a malpractice suit commences either when the plaintiff has notice of the negligent act giving rise to the cause of action or when *667 the plaintiff has notice of the physical injury which is the consequence of the negligent act." See also Moore v. Morris, 475 So.2d at 667. The court reiterated this rule in Barron and Bogorff, notwithstanding various changes in the statute, but this court has recently found that "applying the rule of Barron and Bogorff to the widely divergent fact patterns presented by such cases is not easy." Norsworthy v. Holmes Regional Medical Center, 598 So.2d 105, 106 (Fla. 5th DCA 1992).
In Norsworthy, this court noted that Barron and Bogorff can be broadly read to mean that any adverse event arising in the course of medical care triggers the statute of limitations. Norsworthy, 598 So.2d at 107. This is the main thrust of appellees' argument in support of affirmance: They note that both in their motion in opposition to summary judgment and in the initial appellate brief, appellants admit that Sandra Allen knew her son's condition which gave rise to this action shortly after the injury occurred, that is, shortly after Gregory was born in late 1983. But this court in Norsworthy stated that it believed Bogorff and Barron
simply stand for the proposition that when the nature of the bodily damage that occurs during medical treatment is such that, in and of itself, it communicates the possibility of medical negligence, then the statute of limitations begins to run. On the other hand, if there is nothing about an injury that would communicate to a reasonable lay person that the injury is more likely a result of some failure of medical care than a natural occurrence that can arise in the absence of medical negligence, the knowledge of the injury itself does not necessarily trigger the running of the statute of limitations.
Norsworthy, 598 So.2d at 107. This court emphasized it did not believe the supreme court in Barron intended to say that knowledge of physical injury alone will always trigger the statute of limitations, but rather merely meant
... it is erroneous to suppose that knowledge of injury alone cannot trigger the statute. Some injuries, as in Nardone, Barron and Bogorff, speak for themselves and supply notice of a possible invasion of legal rights.
Norsworthy, 598 So.2d at 108.
The injuries alleged to have been sustained by Gregory Allen do not appear to "speak for themselves" or to suggest that his "injury" was the "result of anything other than natural consequences of a recognized medical treatment competently performed." Norsworthy, 598 So.2d at 108. Appellants alleged below that the appellees represented to them that Gregory's injuries "were residuals of normal events," the result of his premature birth. Appellants also alleged they did not know, and apparently were not told, as discussed below, that cerebral palsy may be caused by the negligence of health care providers. Appellants contend their expert witness would testify that while brain hemorrhages occur spontaneously in a certain percentage of premature births, certain acts alleged to have occurred in this case can cause a brain hemorrhage or substantially increase the likelihood of its occurrence or its severity, including failure to adequately monitor labor and diagnose and treat fetal distress, improper intubation, failure to adequately monitor blood gas levels and failure to timely diagnose and correct misintubation and perinatal asphyxia.
In Moore v. Morris, which the supreme court reaffirmed in Bogorff, the supreme court reversed a district court ruling that, as a matter of law, the plaintiffs were on notice of malpractice because they knew of oxygen deprivation at the time of their child's birth, reasoning:
There is nothing about these facts which leads conclusively and inescapably to only one conclusion  that there was negligence or injury caused by negligence. To the contrary, these facts are totally consistent with a serious or life threatening situation which arose through natural causes during an operation. Serious medical circumstances arise daily in the practice of medicine and because they are so common in human experience, they cannot, without more, be deemed to *668 impute notice of negligence or injury caused by negligence.
Moore v. Morris, 475 So.2d at 668. See also Norsworthy, 598 So.2d at 108. At the least, then, there remains a genuine issue of material fact whether Sandra Allen knew or should have known at Gregory's birth on November 5, 1983 that his injuries may have been caused by a negligent act on the part of appellees. We cannot analogize the alleged facts in this case to the facts in Nardone, Barron and Bogorff so as to conclude that when Sandra Allen learned of her son's premature birth, brain hemorrhage, and subsequent cerebral palsy, she was placed on notice as a matter of law of an incident giving rise to medical malpractice. Norsworthy, 598 So.2d at 108.
Appellants also argue that the statute of limitations was tolled in this case because of either the intentional concealment or negligent failure of appellees to inform Sandra Allen that Gregory's condition was anything other than a consequence of his premature birth. The supreme court has stated:
An attending physician has a strong duty to fully address the concerns of patients and to be fully candid with them. If a doctor's communication to a patient was intended to cause that patient to abandon a claim or an investigation, it may amount to fraudulent concealment.
University of Miami v. Bogorff, 583 So.2d at 1003. See also Norsworthy, 598 So.2d at 108, n. 3 ("If lay persons are to be charged with notice that there may have been an invasion of their legal rights simply upon knowledge of an `injury,' this concomitant duty of disclosure on the part of medical professionals concerning the possible causes should be given substance ...").
The parties here dispute the applicability of Almengor v. Dade County, 359 So.2d 892 (Fla. 3d DCA 1978), a case cited by the supreme court as support for its ruling in Moore v. Morris. The trial court in Almengor had entered a final summary judgment for the defendant hospital on the ground that the action was barred by the statute of limitations. Appellees note the Almengor court acknowledged the established rule of Nardone, that the statute of limitations in a medical malpractice action begins to run when the plaintiff has notice of either the negligent act giving rise to the cause of action or the existence of any injury which is the consequence of the negligent act. Appellants, however, note the Almengor court reversed the summary judgment, reasoning:
The plaintiff is not on notice, however, as to either the negligent act or the injury caused thereby where he has no actual knowledge of either fact because (1) the medical defendant or his employee, servant or agent actively engages in concealment against the plaintiff so as to prevent inquiry or elude investigation or mislead the plaintiff relating to the existence of the cause of action, or (2) the medical defendant-physician or the medical defendant through his employee/servant/agent-physician fails to reveal to the plaintiff facts [as distinguished from mere possibilities or conjecture] known to, or available to such physician by efficient diagnosis, relating to the nature and/or cause of the plaintiff's adverse physical condition. The statute is tolled upon the happening of either of the above two events.
Almengor, 359 So.2d at 894.[3]
In the instant case, appellants alleged that Sandra Allen was told by appellees that Gregory's injuries were the "residuals of normal events" and having relied on *669 these representations, she could not and did not discover until late spring 1986 that Gregory's injuries "had been caused by the negligence of the Defendant health care providers." In their answer brief, appellees state "Ms. Allen was informed by her health care providers, the appellees in this action, that Gregory Allen had suffered a brain hemorrhage which was a natural cause of his premature birth." Yet appellants contend appellees both knew that Gregory was improperly intubated during approximately forty-five minutes shortly after birth and that this improper intubation resulted in very high concentrations of carbon dioxide in his blood, because they performed the blood gas analysis and later reintubated Gregory. They further contend appellees knew or through efficient diagnosis should have known that a condition of high concentrations of carbon dioxide in a premature infant's blood may cause a brain hemorrhage and cerebral palsy and, also, knew or through efficient diagnosis should have known, that failure to adequately monitor labor and timely diagnose and treat fetal distress would make a premature infant susceptible to brain injury and cause a brain hemorrhage and cerebral palsy. There remains, then, as in Almengor, another genuine issue of material fact in this case regarding the concealment of possible causes of Gregory's injuries.
The Moore court noted that the law is well settled in Florida that a party moving for summary judgment must show conclusively the absence of any genuine issue of material fact and the court must draw every possible inference in favor of the party against whom a summary judgment is sought. Moore, 475 So.2d at 668. The court noted summary judgments should be granted cautiously in negligence and malpractice suits. Id. Summary judgment is improper where the evidence reflects conflicting issues of material fact. Holl v. Talcott, 191 So.2d 40 (Fla. 1966). The record before this court presents two genuine issues of material fact: 1) whether Sandra Allen knew or should have known at Gregory's birth on November 5, 1983 that his injuries may have been caused by a negligent act on the part of appellees; 2) whether appellees knew, or should have known through efficient diagnosis, of physical injuries to Gregory inflicted after birth, but failed to inform Sandra Allen, and thereby kept her in ignorance. A jury may find that the statute of limitations bars this claim, if Sandra Allen was on notice of malpractice before spring 1986, or they may find, based on the nature of the injury and the information appellants were given, that the statute of limitations does not bar this claim. Norsworthy, 598 So.2d at 109.
REVERSED.
PETERSON and GRIFFIN, JJ., concur.
NOTES
[1] Appellants on October 5, 1987 filed notice of intent to initiate litigation pursuant to then section 768.57, Florida Statutes (1987). The statute was transferred to section 766.106, Florida Statutes, in 1988 and currently provides:

(4) The notice of intent to initiate litigation shall be served within the time limits set forth in Section 95.11. However, during the 90 day period, the statute of limitations is tolled as to all potential defendants. Upon stipulation of the parties, the 90-day period may be extended and the statute of limitations is tolled during any such extension. Upon receiving notice of termination of negotiations in an extended period, the claimant shall have 60 days or the remainder of the period of the statute of limitations, whichever is greater, within which to file suit.
Therefore, the statute of limitations, assuming it had not already expired in late 1985, was tolled on October 5, 1987, and expired on January 3, 1988, after which appellants had 60 days, i.e. until March 3, 1988, to file their complaint in the medical malpractice action. Rhoades v. Southwest Florida Regional Medical Center, 554 So.2d 1188, 1191 (Fla. 2d DCA 1989).
[2] In Nardone, a 13-year old boy who had been experiencing difficulty with coordination, blurred vision, and headaches was admitted to Jackson Memorial Hospital in January 1965. He underwent two surgical procedures that resulted in such "encouraging, marked, and steady progressive improvement in his condition" that he was told he could shortly go home. Nardone, 333 So.2d at 28. But after a diagnostic procedure was performed on him, he began to suffer constant headaches, drowsiness and "had spiking temperatures and experienced projectile vomiting." 333 So.2d at 29. He had deteriorated into a vegetative state, and upon discharge in July 1965, he was comatose, totally blind, and had suffered irreversible brain damage. The original complaint was filed in May 1971, but the supreme court held the boy's condition was "patent" in 1965. Nardone, 333 So.2d at 40.
[3] The Almengor court also held as we do in this case that there was a genuine issue of material fact as to whether the plaintiff was placed on notice whether her child was injured during birth:

There is some evidence in the record that during this time the plaintiff was aware or should have been aware that the baby was born mentally retarded and thereafter showed signs of mental retardation and abnormal development. We do not believe, however, that this evidence put the plaintiff on notice as a matter of law that the baby was injured during birth because such evidence just as reasonably could have meant that the baby had been born with a congenital defect without any birth trauma.
Almengor, 359 So.2d at 894.