JOANOS, Judge.
This is an appeal from an order of final summary judgment in favor of the defen *1137 dants in a medical malpractice action. The trial court found the action was barred by the statute of limitations. Because we conclude a genuine issue of material fact exists regarding the date appellant knew or should have known there was a reasonable possibility that his injury was attributable to medical negligence, we reverse and remand for further proceedings.
On March 8, 1994, appellant filed a complaint against Bay Medical Center and Gulf Pines Hospital, Inc., alleging that defendants/appellees were guilty of medical negligence and malpractice in the care rendered to appellant in connection with injuries he sustained on October 13, 1991. This initial complaint was met with motions to dismiss which asserted the statute of limitations had run on the claim, because the complaint showed on its face that the underlying incident occurred on October 13, 1991. Appellant’s response to the motions to dismiss included an affidavit of his attorney attesting that August 11, 1993, was the date when appellant’s attorneys first considered that negligence may have occurred in the course of appellant’s medical treatment. After the trial court denied their motions to dismiss, the defendants answered the complaint, raising the statute of limitations as an affirmative defense. In January 1995, following preliminary discovery, appellant filed a second medical malpractice complaint naming additional parties as defendants. Subsequently, the two actions were consolidated, after which all named defendants filed motions for summary judgment, again asserting that the action was barred by the statute of limitations.
On October 13, 1991, appellant was attacked and beaten unconscious by four or five young men. Appellant was taken to the emergency room of Bay Medical Center. Because the facility was crowded and appellant could not be treated immediately, he was taken to the emergency room at Gulf Pines Hospital. Appellant remained at Gulf Pines for more than nine hours. He then was transferred to Bay Medical Center by ambulance, with a preliminary diagnosis of possible intracerebral bleeding. After appellant had been in the emergency room of Bay Medical Center for five hours, he went into respiratory arrest. Crisis treatment was administered for the respiratory arrest, after which appellant was placed in the intensive care unit and thereafter was admitted to the hospital. He was discharged two months later on December 4, 1991, with a diagnosis of multiple head trauma resulting in paralysis of two cranial nerves. Medical evaluations performed since appellant’s discharge indicate he has suffered permanent brain damage secondary to anoxic encephalopathy, caused by the cardiopulmonary arrest he suffered while in Bay Medical Center.
The individuals responsible for the attack upon appellant were prosecuted, and ultimately were convicted. In a letter dated January 6, 1992, to the assistant state attorney in charge of the criminal prosecutions, appellant’s counsel stated:
This letter is to advise you of my representation of Mr. Anthony Kenneth Stephens, ... regarding his assault and personal injuries he sustained as a result of a vicious attack on October 13, 1991. I have been retained primarily to investigate, evaluate and proceed with civil actions against any of the tortfeasors, business proprietors and/or medical providers if there is a basis for civil liability.
I have also been employed to represent the individual interests of Mr. Stephens in the criminal prosecutions filed by the State against the individuals involved. As I explained to Mr. Stephens the criminal prosecution will be handled by your office exclusively. However, Mr. Stephens has asked that I be involved in the process to make sure that he knows of and understands the various stages of the prosecution. I have spent many hours with Mr. Stephens and his family. As such I feel that I can be of some assistance to the State in making sure that the Court is fully aware of the extent of Mr. Stephens’ injuries, medical expenses and permanent disabilities.
It is my understanding that some or all of the young men charged have entered not guilty pleas. I have also been informed that there is a pretrial conference scheduled for Wednesday, January 22, 1992. I *1138 would like to appear at the conference to represent the interests of my client and assist your office in any manner that I can. I will call you prior to this date to discuss my involvement in greater detail.
Mrs. Jackie Stephens (my client’s mother) has advised me that Bay County Sheriffs Office Investigator Mark Dufrense has prepared an investigation report as well as obtained statements from the defendants and various witnesses. I would like to obtain a copy of his investigation report and defendant or witness statements.
I am willing to share with you and your office any of the information that I have gathered from my interviews of Mr. Stephens, his family, other witnesses and my review of his medical records.
The trial court viewed this letter as establishing unequivocally that appellant and his attorney “knew or should have known prior to January 6, 1992, that there was a reasonable possibility that [appellant’s] injuries were caused by medical negligence.” Based on its interpretation of the letter, the trial court found the two-year limitations period for medical malpractice claims began January 6,1992. Since appellant’s complaint was filed more than two years after January 6, 1992, the trial court found the claim barred by the statute of limitations. We cannot agree.
The applicable limitations provision is section 95.11(4)(b), Florida Statutes, which “prescribes (1) a statute of limitations of two years; (2) a statute of repose of four years absent fraud or intentional misconduct; and (3) a statute of repose of seven years where there is an allegation that fraud, concealment, or intentional misrepresentation of fact prevented discovery of the negligent conduct.” Carr v. Broward County, 541 So.2d 92, 94 (Fla.1989). The statute begins to run when the plaintiff knew or should have known, either that injury had occurred, or that medical negligence had occurred. Nardone v. Reynolds, 333 So.2d 25 (Fla.1976). See also University of Miami v. Bogorff, 583 So.2d 1000 (Fla.1991); Barron v. Shapiro, 565 So.2d 1319 (Fla.1990).
In 1993, the supreme court reinterpreted the Nardone rule, because the court found the rule “may not produce just or even reasonable results” when applied to the facts of some cases. To ameliorate the harsh results which can occur by strict application of the Nardone rule, the court held:
[T]he knowledge of the injury which will trigger the statute of limitations means not only knowledge of the injury but also knowledge that there is a reasonable possibility that the injury was caused by medical malpractice. The nature of the injury, standing alone, may be such that it communicates the possibility of medical negligence, in which event the statute of limitations will immediately begin to run upon discovery of the injury itself. On the other hand, if the injury is such that it is likely to have occurred from natural causes, the statute will not begin to run until such time as there is reason to believe that medical malpractice may possibly have occurred.
Tanner v. Hartog, 618 So.2d 177, 181-182 (Fla.1993).
In a concurring opinion, Justice Kogan recommended that trial and district courts relying upon the majority opinion should focus on the comments dealing with injuries of a nature as to have occurred from natural causes, in which case the statute will not begin to run until there is reason to believe that medical malpractice was possible. Justice Kogan drew two conclusions from these comments:
(1) a “possibility” of negligence does not east if the untoward medical event reasonably appeared likely to have been the product of an agency other than malpractice, such as “natural causes”; and (2) “knowledge” about this possibility is viewed from the perspective of the actual plaintiffs, not from the perspective of persons with training or skills different from the plaintiffs.
Tanner v. Hartog, 618 So.2d at 185. Thus, when confronted with the question of the plaintiff’s awareness of the existence of medical malpractice, trial courts should inquire into the facts actually known to plaintiffs and the plaintiffs’ level of knowledge, education, and awareness of medical practice and what is likely to be considered a negligent act. In *1139 addition, courts must inquire into what the medical providers actually told the plaintiff about the event. Id.
The record in this ease indicates the adverse consequences of appellant’s injuries were such that they were likely to have occurred naturally as a result of the severe head trauma he suffered in the beating, rather than by medical negligence. Pursuant to Tanner, the limitations period would not begin to run until there was reason to believe that medical negligence may have occurred. Appellant testified that the possibility of medical negligence first became a consideration when he could not understand why his condition failed to improve. Although appellant was unable to furnish a specific date, his testimony and his attorney’s affidavits indicate medical negligence was deemed a possibility in mid-1993.
The eighteen-month lapse of time between the date of injury and appellant’s alleged awareness of the possibility of medical negligence may be reasonable, when considered with reference to the description of his injuries and his overall condition as it appears in the hospital discharge reports. After a two-month hospitalization, appellant was discharged with orders for continuing speech and physical therapy, and medication. Unfortunately, following his discharge, appellant’s seizures increased in frequency and in severity, his fine motor skills decreased, and his balance was impaired. The criminal trials of his attackers took place during this eighteen-month period. Appellant and his treating physicians testified at length in the criminal trials. It appears their testimony was elicited for sentencing and restitution purposes.[1]
The language of the January 6,1992, letter from appellant’s attorney to the assistant state attorney could be construed as indicating that appellant had considered the possibility of medical negligence by that date. However, the language is equally susceptible to an interpretation that the attorney had been retained to help appellant obtain restitution and disability benefits. The 1991 medical reports all attributed appellant’s condition to trauma, and described etiology of the cardiopulmonary and respiratory arrest as being of unknown origin. A review of the record of this cause in accordance with the principles articulated by the supreme court in Tanner v. Hartog, indicates that there is a question of fact as to whether the permanent brain damage appellant suffered is of a nature which a lay person reasonably could believe as having occurred as a result of the head trauma inflicted upon appellant by his assailants, rather than as a result of the cardiopulmonary arrest allegedly attributable to medical neglect. Therefore, we conclude a genuine issue of material fact exists as to when appellant had knowledge of the anoxic encephalopathy and knowledge of the reasonable possibility that his injury was caused by medical negligence.
Accordingly, we reverse the grant of final summary judgment in favor of appellees, and remand this cause for further proceedings.
WOLF and VAN NORTWICK, JJ., concur.

. Appellant received $3,500.00 from the Crime Victims' Compensation Fund, and he was successful in his efforts to obtain disability benefits.