560 So.2d 1285 (1990)
Antoinette MARTIN, Appellant,
v.
David M. DRYLIE, M.D., Appellee.
No. 87-1272.
District Court of Appeal of Florida, First District.
April 25, 1990.
Rehearing Denied May 31, 1990.
*1286 Donna Sumner Cox of Dayton, Sumner, Luckie & McKnight, P.A., Dade City, for appellant.
J. Craig Knox of Fuller, Johnson & Farrell, P.A., Tallahassee, for appellee.
PER CURIAM.
In this medical malpractice case, appellant, Antoinette Martin, seeks review of an order granting summary judgment in favor of appellee, Dr. David M. Drylie, on the ground that he was entitled to claim sovereign immunity as a matter of law. Dr. Drylie argues that the lower court's order is affirmable on grounds of either sovereign immunity or the statute of limitations. We find that the trial court was correct in denying summary judgment on statute of limitations grounds but erred in finding that Dr. Drylie was entitled to claim sovereign immunity as a matter of law. Accordingly, we affirm in part, reverse in part and remand.
Dr. Drylie has been on the staff of Shands Teaching Hospital in Gainesville for almost three decades. He is a full-time faculty member at the University of Florida College of Medicine. The University pays his salary as professor and Chief of the Division of Urology, Department of Surgery. On October 28, 1982, Dr. Drylie performed surgery on Ms. Martin to relieve a urological problem. Immediately after the surgery, Ms. Martin experienced a problem using her right leg. Dr. Drylie and another physician told her that the problem was due to the positioning of her body during surgery. Dr. Drylie referred her to neurologists at Shands and arranged for physical therapy. Ms. Martin became proficient in the use of crutches before being discharged from Shands on November 6, 1982, but continued in rehabilitation therapy at her home.
In December 1982, Ms. Martin's family doctor, Dr. Suchyta, told Ms. Martin that Dr. Drylie was at fault for the way the surgery was performed in that he should have checked her position during the course of that surgery.
In July or August of 1983, one of Dr. Drylie's associates, Dr. Finlayson, began filling in for Dr. Drylie. He and Ms. Martin spoke about her leg problems and he told her that he had a similar problem with his leg and that there was nothing that could be done about it.
The last care provided for Ms. Martin at Shands occurred in July 1983 when she was fit with a leg brace. She began walking with a cane and the leg brace at that time. In August 1983, Dr. Drylie wrote a letter to Dr. Politano at the University of Miami concerning the condition of Ms. Martin's leg. Ms. Martin never consulted with Dr. Politano, however, because she felt that she had experienced enough difficulty.
Ms. Martin's leg continued to improve until some time in 1985. At the time of her deposition in January 1986, she was taking no testified that cold weather caused discomfort in her leg but that she can now drive herself to work, even though her other physical activities are somewhat limited because of the unpredictable leg condition.
On March 22, 1985, Ms. Martin filed a complaint against Dr. Drylie alleging medical negligence and damages. In her complaint she alleges that she discovered the alleged negligence in August 1983. Dr. Drylie filed an answer and an affirmative *1287 defense alleging that the statute of limitations barred the suit. On March 2, 1987, Dr. Drylie filed a motion for summary judgment alleging that he was an employee of the University of Florida College of Medicine and that his treatment of Ms. Martin was within the scope of that employment. He contended that he was immune from personal liability pursuant to section 768.28(9)(a), Florida Statutes. He also maintained that the surgical procedure took place on October 28, 1982, that Ms. Martin knew of the problems immediately after surgery, and that the statute of limitations therefore barred Ms. Martin's suit.
Ms. Martin filed an affidavit in opposition to Dr. Drylie's motion for summary judgment. She stated that Dr. Drylie and his associates assured her after the surgery that her condition was temporary and would clear up so that she would have no permanent problems with her leg. According to the affidavit, Dr. Drylie told Ms. Martin that a condition like hers sometimes occurs after this type of surgery but that it normally subsides. She swore that it was not until her appointment with Dr. Finlayson in August 1983 that she felt Dr. Drylie may have been negligent and that Dr. Finlayson told her that her leg problem was permanent. Her affidavit further asserts that the physicians' assurances that her leg problem was a temporary condition prolonged her discovery of Dr. Drylie's negligence.
At the hearing on Dr. Drylie's motion for summary judgment, counsel for both parties argued this court's opinion in DeRosa v. Shands Teaching Hospital and Clinics, 504 So.2d 1313 (Fla. 1st DCA 1987). In DeRosa, the court held that resident physicians in training at Shands were employee/agents of the state and entitled to assert a sovereign immunity defense to a medical malpractice claim. After hearing argument, the trial judge granted summary judgment on the basis of the sovereign immunity defense. At the same time, he denied Dr. Drylie his summary judgment on the statute of limitations defense because of what he perceived to be unresolved facts.
On appeal of this order, Ms. Martin maintains that Dr. Drylie is not entitled to the defense of sovereign immunity and that DeRosa is distinguishable because the defendants in that case were resident physicians and, unlike Dr. Drylie, were not staff members at Shands. She argues further that she is suing Dr. Drylie as an independent physician and as a staff member at Shands Teaching Hospital, and not as a faculty member of the University of Florida College of Medicine. She rightly points out that Shands is an independent private hospital that provides liability insurance for Dr. Drylie and argues that it is illogical for him to reap the benefits of working at a private hospital while being able to claim sovereign immunity. She argues that the Board of Regents cannot control a medical doctor who operates as an independent professional with his primary duty to his patient and notes that the bylaws of the medical staff at Shands show that the hospital does, in fact, control the conduct of staff physicians. Last, she contends that as a private hospital, Shands is not entitled to sovereign immunity. Shands Teaching Hospital and Clinics, Inc. v. Lee, 478 So.2d 77 (Fla. 1st DCA 1985).
Dr. Drylie responds that summary judgment is affirmable on two separate grounds. First, he claims that as an employee of the State of Florida he is entitled to a sovereign immunity defense pursuant to section 768.28(9)(a), Florida Statutes, since no allegation has been made that he acted in bad faith in performing the surgery in question. He argues also that he is not employed by Shands but is simply granted staff privileges at that hospital pursuant to an agreement between the hospital and the University of Florida College of Medicine. Although he has no agreement of his own with the University or the Hospital, he maintains that he is covered by the College's agreement with Shands. That agreement states: (1) the College has exclusive control over faculty members *1288 providing patient care services at Shands; (2) faculty members are not employees of Shands; and (3) faculty members are entitled to sovereign immunity. He maintains that Shands retains authority only to restrict personnel practicing medicine in the hospital to faculty physicians and physicians in training, and further maintains that this agreement was upheld in DeRosa as to physicians in training if not to staff physicians who are also faculty members in the College of Medicine. Second, he argues that the two-year statute of limitations as set forth in section 95.11(4)(b), Florida Statutes, bars this suit because the limitation period commences when the plaintiff is put on notice of an invasion of her legal rights. Roberts v. Casey, 413 So.2d 1226 (Fla. 5th DCA), rev. denied 424 So.2d 763 (1982).
In her response, Ms. Martin notes that the DeRosa case did not discuss the bylaws of the medical staff at Shands that show, according to Ms. Martin, that Shands does in fact control the conduct of its staff. Furthermore, she argues, Shands has the right to select its medical staff and to terminate staff privileges. The fact that the College pays Dr. Drylie's salary as is noted in DeRosa may be the least determinative factor in a determination of the relationship between Dr. Drylie and Shands. With regard to the statute of limitations defense urged by Dr. Drylie, Ms. Martin cites Swagel v. Goldman, 393 So.2d 65 (Fla. 3rd DCA 1981), as authority for her contention that a fact issue was created when Dr. Drylie continued to treat her and assure her that the condition of her leg was only temporary and would presumably clear up with the passage of time. The issue of fact she sees is whether Dr. Drylie's assurances prolonged the discovery of his negligence.
We first direct our attention to the statute of limitations issue raised by Dr. Drylie, and finding that the instant factual scenario is analogous to that presented in Swagel, we affirm the trial court's denial of Dr. Drylie's motion for summary judgment on this ground without further comment.
With respect to the sovereign immunity issue, we perceive the question involved to be whether, at the time of the negligent act alleged, Dr. Drylie was acting "in the scope of his employment or function" pursuant to section 768.28(9)(c), Florida Statutes, i.e., in his state employment on the faculty of the College of Medicine. Otherwise stated, does the record in this case at this point establish as a matter of law that when he operated on Ms. Martin, Dr. Drylie was acting solely within the scope of his work as a professor at the Medical College? Or does the evidence suggest that at the time and place in question Dr. Drylie was acting as a staff physician of a private hospital treating a hospital patient?
DeRosa does not resolve this issue. There, the physician defendants were completing their education and training requirements under the supervision of Dr. Feldman, who was a medical college faculty member and, by virtue of that employment, a staff physician at Shands. The physician defendants were not Shands staff members, but rather were found to be under the control of the Board of Regents. Also, in DeRosa, the record does not reflect that the court considered the matter of the Shands Hospital bylaws which purport to control to a large extent the performance of staff physicians. Indeed, those bylaws specifically regulate surgical and operating room procedures. These provisions loom large in determining which "hat" Dr. Drylie wore when it is remembered that the instant claim arises from the alleged malpractice committed while he was performing surgery in an operating room at Shands.
A reading of the contract alluded to earlier that labels Dr. Drylie a state employee entitled to claim sovereign immunity must be limited to his performance of his teaching function. Otherwise, its provisions run afoul of Shand's bylaws and the black letter legal maxim that a contract is not binding *1289 on one not a party to it. Clearly, Ms. Martin was not a signatory to that contract, and the critical question as we view it is Dr. Drylie's status or function vis-a-vis his patient.
In reversing the granting of summary judgment on sovereign immunity grounds, we do not decide whether Dr. Drylie was or was not a state employee at the time in question. We hold only that, under the circumstances of this case, a factual issue was presented as to his function when he operated on Ms. Martin.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
ERVIN and ZEHMER, JJ., concur.
WENTWORTH, J., concurs with opinion.
WENTWORTH, Judge, concurring.
I agree that summary judgment should not have been granted upon a claim of sovereign immunity, as a factual issue is presented regarding Dr. Drylie's status at the relevant time in question. In reaching this conclusion it is not necessary to presently define the full range of Dr. Drylie's functions as a faculty member of the College of Medicine. Nor is Shands' status as a private hospital which provides liability insurance determinative. And the critical inquiry should not be limited to Dr. Drylie's role vis-a-vis his patient, as the doctor's status is also impacted by his relationship with both Shands and the college. The agreement between Shands and the college is thus pertinent in this regard, although not controlling. The medical staff bylaws are also pertinent, but it should be noted that this document is an agreement which was adopted by the medical staff, and not one which was shown to have been imposed by Shands. The degree of control which this document affords Shands as to the surgical committee, or the operating room committee which largely consists of College of Medicine faculty, remains an unresolved matter.
The deposition testimony in this case indicates that in addition to Dr. Drylie other medical practitioners were involved in Ms. Martin's care and assisted during the process of her operation. In DeRosa v. Shands Teaching Hospital & Clinics Inc., 504 So.2d 1313 (Fla. 1st DCA 1987), this court approved a summary judgment in favor of two doctors who were fellows in the College of Medicine and assisted during an operation at Shands as physicians in training under the supervision of a faculty member. Summary judgment was thereafter entered for the supervising faculty doctor, and affirmed by this court without opinion in DeRosa v. Shands Teaching Hospital & Clinics, Inc., 538 So.2d 1256 (Fla. 1st DCA 1989). Since it is unclear whether any physicians in training assisted in Ms. Martin's operation under Dr. Drylie's supervision, and because of the other unresolved matters impacting the factual issue of Dr. Drylie's status in connection with Ms. Martin's treatment and surgery, summary judgment should not have been granted on the record here presented.