577 So.2d 632 (1991)
SHANDS TEACHING HOSPITAL AND CLINICS, INC., Appellant/Cross-Appellee,
v.
Delmar W. PENDLEY, As Personal Representative of the Estate of Audrey Lee Pendley, Deceased, Appellee/Cross-Appellant.
No. 90-00270.
District Court of Appeal of Florida, First District.
March 26, 1991.
Rehearing Denied May 3, 1991.
*633 Timothy W. Volpe of Smith & Hulsey, Jacksonville, for appellant/cross-appellee.
Craig F. Hall of Hall & Hall, P.A., Gainesville, and P. Scott Russell, IV, William C. Gentry and Corinne C. Hodak of Gentry and Phillips, P.A., Jacksonville, for appellee/cross-appellant.
BOOTH, Judge.
This cause is before us on appeal from a final judgment for appellee in an action for medical malpractice. Appellant Shands Teaching Hospital and Clinics, Inc. (Shands) contends that the trial court erred in denying its motion for directed verdict on the ground that Dr. Vermazen, the physician found negligent, was the actual agent of Board of Regents rather than Shands. On cross-appeal, appellee contends that the trial court erred in granting Shands' motion for directed verdict on the issue of whether Dr. Vermazen was the apparent agent of Shands. We affirm as to the appeal and, consequently, do not reach the cross appeal.
On September 28, 1982, Audrey Lee Pendley underwent surgery for the removal of kidney stones at Shands Teaching Hospital. The surgery went well. After surgery, Ms. Pendley was transferred to the Shands Hospital Surgical Intensive Care Unit (SICU). During her recovery in the SICU, a mechanical ventilator provided Ms. Pendley with oxygen and controlled her respiration.
At the time of Ms. Pendley's surgery, Dr. Vermazen was a resident physician in the College of Medicine of the University of Florida, and one of three resident physicians assigned to duty in the SICU. Every third night, Dr. Vermazen went on a 24-or-more-hour tour of duty. Dr. Vermazen had responsibility for weaning Ms. Pendley off the mechanical ventilator. Dr. Vermazen was also responsible for monitoring the postsurgery recovery of the other patients in the SICU on the night in question.
Dr. Vermazen was the only physician on duty in the SICU when he removed the ventilator from Ms. Pendley at 5:15 a.m. on September 29, 1982. Shortly after Dr. Vermazen removed the ventilator, Ms. Pendley suffered a cardiopulmonary arrest. Although resuscitated, she remained in a coma until her death on November 1, 1982.
Appellee sued Shands. By amended complaint filed in April 1988, appellee alleged that Dr. Vermazen was negligent in his treatment of Ms. Pendley and that, at the time of the negligent treatment, Dr. Vermazen was an actual and apparent agent of Shands. Shands denied that Dr. Vermazen was negligent and contended that he was an agent of the Board of Regents, and not Shands. At the close of the evidence, Shands moved for directed verdict as to both theories of agency. The trial court granted Shands' motion as to apparent agency only. The jury found that Dr. Vermazen was negligent when he removed the ventilator from Ms. Pendley and that when he did this, he was the actual agent of Shands.
This court has previously held that Shands is not a state agency or corporation acting primarily as an agency of the state. Shands Teaching Hospital and Clinics, Inc. v. Lee, 478 So.2d 77, 79 (Fla. 1st DCA 1985). Under an agreement between Shands and the University of Florida College of Medicine, resident physicians of the College of Medicine can obtain medical training at Shands Hospital under the supervision of the college's faculty members. The University is to assign a specific number of resident physicians to fill positions at Shands. Shands, in return, is to pay the University for the services of the residents,[1] provide professional liability insurance coverage, and also provide funding to support a health insurance program for the residents. The agreement further provides *634 that all of the faculty and resident physicians providing services at Shands may claim sovereign immunity under section 768.28(9), Florida Statutes, as employees of the state, and are not to be considered employees of Shands. The agreement, however, is not dispositive of Dr. Vermazen's status because the issue of agency does not turn exclusively upon the labels chosen by parties to a contract. Further, a contract cannot bind those who are not parties to it.
Shands' bylaws give Shands the right to take corrective action against its physicians and set forth disciplinary procedures. David Mathias, vice president and corporate counsel of Shands, testified that Shands' chief executive officer, a nonphysician employee of Shands, had the right to recommend to the chief of Shands' medical staff that corrective action be taken against resident physicians, should the need arise. The chief of staff, in turn, reports to Shands' board of directors. The board of directors has ultimate responsibility for the quality of health care at Shands.
The critical issue is whether, on the evidence presented, Dr. Vermazen's status as an agent for Shands was an issue for the jury to resolve. In De Rosa v. Shands Teaching Hospital and Clinics, Inc., 504 So.2d 1313, 1315 (Fla. 1st DCA 1987), this court affirmed the trial court's entry of summary judgment in favor of Shands and two resident physicians in training at Shands who, at the time of the acts of alleged negligence, were operating under the supervision of a faculty member of the College of Medicine. Subsequently, in Martin v. Drylie, 560 So.2d 1285, 1288-1289 (Fla. 1st DCA 1990), this court reversed a summary judgment for a physician who was both a faculty member at the college and a staff physician at Shands. At the time of the physician's alleged negligence in Martin, the physician was performing surgery at Shands. The court in Martin distinguished De Rosa, noting (1) that the physician defendants in De Rosa were residents acting under the direct supervision of a College of Medicine faculty member at the time of the alleged negligence; and (2) that the record in De Rosa did not reflect that the court considered Shands' bylaws. It was not clear in Martin whether any physicians in training were involved. The impact of the bylaws in Martin remained to be resolved on remand in connection with the factual issues yet to be tried in that case.
This case is more closely analogous to the Martin case than to De Rosa. In the circumstances here, the testimony of Shands' representative and Shands' bylaws permit a determination that Shands had a right to control the conduct of Dr. Vermazen, to the extent control was appropriate in view of his professional status. Further, Dr. Vermazen was performing a function essential to Shands as he was acting without supervision as the sole physician on duty in the SICU. The jury was thus entitled to find that Dr. Vermazen was acting as an agent of Shands at the time of the events giving rise to this suit.
We find that the evidence adduced at trial failed to establish as a matter of law that Dr. Vermazen was not acting as an agent of Shands at the time he was negligent. Accordingly, the trial court did not err in denying Shands' motion for directed verdict. The final judgment is affirmed.
MINER, J., and WENTWORTH, Senior Judge, concur.
NOTES
[1] The record shows that Shands makes a lump-sum payment to the University's College of Medicine which is sufficient to pay salaries for approximately half of the resident physicians, and the College then pays the residents.