**IN RE Leo HOLZENTHAL, III and Kathleen M. Bishop, Debtor.**

**Case No. 6:09–bk–14842–RAC**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Signed July 7, 2016

Filed July 11, 2016

Rosalyn Dunlap, Arlys L. Buschner, Arlys L. Buschner PA, Orlando, FL, for Debtor.

## MEMORANDUM DECISION AND ORDER DENYING TRUSTEE'S MOTION TO APPROVE SETTLEMENT AGREEMENT

(Doc. No. 45)

Roberta A. Colton, United States Bankruptcy Judge

Carla Musselman, the chapter 7 trustee ("Trustee"), seeks an order approving a settlement agreement pursuant to Fed. R. Bankr. P. 9019 ("Motion"). [Doc. No. 45]. The settlement relates to a pelvic mesh product liability claim held by debtor Kathleen M. Bishop (the "Claim"). The Trustee asserts that the Claim is property of the estate and subject to administration for the benefit of creditors. Debtors oppose the Motion, asserting that the Claim arose after commencement of this bankruptcy case and, thus, is not property of the bankruptcy estate. [Doc. No. 48]. The Court agrees with Debtors. For the reasons that follow, the Motion is **DENIED**.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and §§ 157(a), (b)(2)(A), and the standing order of reference entered by the district court. This memorandum-decision and or-

der incorporates the Court's findings of fact and conclusions of law as permitted by Fed. R. Bankr. P. 7052.

## BACKGROUND FACTS

*Procedural History*

Debtors filed their joint chapter 7 petition on October 1, 2009. Debtors' schedules and statements do not list the Claim. [Doc. No. 1]. The Trustee filed a Report of No Distribution on November 19, 2009. Debtors received their discharge on January 28, 2010, and the case was closed, without issue, on February 9, 2010.

The bankruptcy was reopened on September 17, 2015. [Doc. No. 29]. The Trustee discovered a potential settlement of the Claim and moved to reopen the case, asserting that settlement funds might be available for distribution to creditors.

A trial on the Motion was held on June 8, 2016, at which the Court heard the testimony of Ms. Bishop and received into evidence two documents offered by the Trustee. Received were (1) a copy of the complaint filed in multidistrict litigation before the District Court for the Southern District of West Virginia (*In re: American Medical Systems, Inc., Pelvic Repair System Products Liability Litigation*, No. 2:12-4436, MDL No. 2325) ("MDL Complaint"), and (2) a "Plaintiff Profile Form" completed by Ms. Bishop as part of that litigation.

*Undisputed Matters*

The Trustee conceded that, at the time the petition was filed, Ms. Bishop had no knowledge of the Claim. The Trustee also confirmed that there is no allegation of concealment.

*Facts Adduced at Trial*

Ms. Bishop has long suffered from severe colorectal issues. In 2004, she underwent two unsuccessful surgeries to correct these issues. In 2007, she consulted with the Cleveland Clinic, which recommended the implantation of pelvic mesh—the "defective" product. In January 2007, Ms. Bishop underwent the implantation procedure.

The pelvic mesh implantation did not correct Ms. Bishop's condition. She testified that it "just did not work." She did not return to the Cleveland Clinic, as she was dissatisfied with the quality of care she received. The pelvic mesh was not removed. Ms. Bishop had no other significant medical issues prior to the implantation. In 2015, she underwent another surgical procedure to implant a spinal cord stimulator. The spinal cord stimulator has provided her some relief.

Ms. Bishop did not identify any specific injury that resulted from the "unpleasant" implantation surgery other than to state that the procedure "didn't work." The injuries alleged in the MDL Complaint, *i.e.* pain, discomfort, dyspareunia, urinary problems and rectal bleeding, existed prior to the implantation and have continued since. Ms. Bishop testified that her injuries were perhaps "aggravated" by the pelvic mesh, but that it was "difficult to say." Ms. Bishop has not undergone an examination to identify any specific injury related to the pelvic mesh.

Ms. Bishop testified that, at the time the petition was filed, she had no knowledge of litigation related to defective pelvic mesh, nor was she aware of any issue associated with her implants or pelvic mesh implants generally. Ms. Bishop first became aware of litigation related to faulty pelvic mesh implants in 2011, when she saw televised commercials for the Sokolove law firm. Initially, she was uncertain if her implants were involved. She retained the Sokolove firm shortly after the firm confirmed that her implants were involved and potentially defective.

## POSITIONS OF THE PARTIES

The Trustee argues that the Claim is property of the estate and subject to administration for the benefit of creditors because the Claim arose prior to the filing. The Trustee's argument is predicated on a single fact, namely that the implantation procedure occurred pre-petition. Though she concedes that no other relevant fact occurred pre-petition, the Trustee contends that the Claim is "sufficiently rooted in the pre-bankruptcy past," *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), such that the Claim arose prior to Debtors' filing and, thus, is property of the estate.

Debtors contend that the Claim is not property of the estate because, under Florida law, Ms. Bishop's cause of action did not accrue until sometime after the filing of the petition. Debtors assert that the accrual of the Claim is subject to a delayed discovery rule. As Ms. Bishop did not become aware of the potential defective nature of the pelvic mesh until 2011, Debtors argue her Claim did not arise until that time.

## DISCUSSION

■ Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It is settled that a debtor's interests in property are defined by state law. *See, e.g., Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Bracewell v. Kelley (In re Bracewell)*, 454 F.3d 1234, 1243 (11th Cir. 2006). As to legal claims held by a debtor, the Court "look[s] to state law to determine when a claim arises, and if it arises on or before the commencement of the bankruptcy case, it is part of the bankruptcy estate." *Bracewell*, 454 F.3d at 1242 (citing *In re Alvarez*, 224 F.3d 1273 (11th Cir. 2000) ).

■ Under Florida law, a cause of action accrues or begins to run for purposes of the statute of limitations upon the occurrence of the last element of the cause of action. *Davis v. Monahan*, 832 So.2d 708, 709 (Fla. 2002); *see* Fla. Stat. § 95.031. However, products liability claims are subject to an exception, "in which the accrual of the cause[ ] of action is delayed until the plaintiff either knows or should know that the last element of the cause of action occurred." *Davis*, 832 So.2d at 709; *see* Fla. Stat. § 95.031(2)(b). This is commonly referred to as the delayed discovery rule. *Davis*, 832 So.2d at 709.

■ Knowledge of a products liability claim need not rise to the level of legal certainty; instead, the plaintiff "need only have notice, through the exercise of reasonable diligence, of the *possible* invasion of [her] legal rights." *Hamrac v. Dorel Juvenile Grp., Inc.*, No. 3:09vd390/RV/MD, 2010 WL 1879278, at *4 (N.D. Fla. May 11, 2010) (quoting *Univ. of Miami v. Bogorff*, 583 So.2d 1000, 1004 (Fla. 1991) ). "[T]here must be two essential facts present for the statute to begin to run. There must be a distinct injury and some causal connection between the injury and exposure to [the offending] product." *Samson v. R.J. Reynolds Tobacco Co.*, No. 96-414-CIV-T-24( ), 1997 WL 373475, at *5 (M.D. Fla. June 2, 1997) (citing *Babush v. Am. Home Products Corp.*, 589 So.2d 1379 (Fla. Dist. Ct. App. 1991) ). In other words, the limitations period on a products liability claim begins to run when the plaintiff knows or should have known of a causal connection between an injury distinct in some way from conditions naturally to be expected and her exposure to the product in question.

■ Ms. Bishop did not suffer any specific, distinct injury from the pelvic mesh implantation. She testified simply that it

"just didn't work." Ms. Bishop indicated that her injuries were perhaps "aggravated" as a result of the procedure, but that it was difficult to tell. However, she testified that she become aware of possible issues related to pelvic mesh implants in 2011 when she saw television commercials for the Sokolove firm. Although initially uncertain if the pelvic mesh litigation described in the commercials related to her, Ms. Bishop did know, or at least suspected, that her implant might be involved. The Court finds Ms. Bishop's testimony to be credible and that this is when she first became aware of the *possible* invasion of [her] legal rights," *Hamrac*, 2010 WL 1879278, at *4, and, therefore, her claim accrued. *See In re Smith*, 293 B.R. 786 (Bankr. D. Kan. 2003); *cf. Doe v. Cutter Biological*, 813 F.Supp. 1547 (M.D. Fla. 1993). Because the Claim did not accrue until after the bankruptcy petition was filed, the Claim is not property of the estate and, therefore, not subject to administration by the Trustee.

## CONCLUSION

Accordingly, it is **ORDERED** that the Trustee's Motion to Approve the Settlement Agreement relating to debtor Kathleen M. Bishop's products liability claim is **DENIED**.

The Clerk is directed to serve a copy of this order on interested parties who are non-CM/ECF users.

ORDERED.